United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nickey Gregory Company, LLC, et al., | No. C 10-80297 MISC JSW (JL) |
| Plaintiffs, | |
| v. | REPORT AND RECOMMENDATION RE THIRD PARTY CLAIM  (Docket # 6) |
| Agricap, LLC, et al., | |
| Defendants. _____/ | |

**I.    Introduction**

The Third Party Claim of FCC, LLC dba in California as First Capital Western Region, LLC,  was referred by the district court (Hon. Jeffrey S. White) under 28 U.S.C. §636(b). The matter came on for hearing before this Court. Attorney for Plaintiff was Mary Jean Fassett, Pro Hac Vice, McCARRON & DIESS, Washington, D.C.. Attorney for FCC was Erin Welsh, BUCHALTER NEMER, Los Angeles. Attorneys for AgriCap were Ayse Kuzucuoglu and Christopher Heisenberg, HINCKLEY & HEISENBERG LLP, New York City. The Court carefully considered the moving and opposing papers, the applicable law, and the arguments of counsel, and hereby concludes that the Third Party Claim should be denied. The levied funds are part of a PACA Trust Account and are payable only to Plaintiffs, regardless of the security status or seniority of liens of all other creditors of Defendants, including FCC. For the foregoing reasons,  this Court recommends that the

district court enter judgment dismissing the Third Party Complaint, ordering that Plaintiffs are entitled to the proceeds of the levies, and awarding Nickey Gregory fees and costs under Local Rule 54-5.

## II. Factual and Procedural Background

### A. Previous Rulings

#### 1. District court judgment

The case before this Court arises from levies on bank accounts of AgriCap, LLC ("AgriCap") pursuant to two Writs of Execution issued by this Court based on an unpaid final judgment entered by the United States District Court for South Carolina in favor of Plaintiffs and against AgriCap in the amount of $204,305.86. The district court originally filed an Opinion and Order which directed AgriCap to disgorge trust assets to Plaintiffs for a lesser amount of $88,690.75. *Nickey Gregory Company, LLC v. AgriCap, LLC*, 592 F.Supp.2d 862, 878 (D.S.C. 2008). Cross-appeals were taken by Plaintiffs and AgriCap to the U.S. Court of Appeals for the Fourth Circuit. The Fourth Circuit concisely summarized the issues and its decision as follows.

> Two sellers of perishable agricultural commodities, Nickey Gregory Company, LLC, and Poppell's Produce Inc., commenced this action under the Perishable Agricultural Commodities Act, 1930 ("PACA"), 7 U.S.C. §§499a-499t, to recover $106,696 owed them for the sale of produce to Robison Farms, LLC., a bankrupt South Carolina produce distributor. They named as defendant AgriCap, LLC, a finance company that provided secured financing to Robison Farms for working capital, and they demanded that AgriCap disgorge the proceeds of Robison Farms' accounts receivable held by AgriCap as collateral to secure repayment of monies advanced by AgriCap to Robison Farms. The two produce sellers claim that 7 U.S.C. §499e(c)(2) created a trust for their benefit over the proceeds of their produce, including the accounts receivable that Robison Farms used for collateral in its arrangement with AgriCap, and that they therefore had a superior interest in the accounts receivable and proceeds held by AgriCap.
>
> AgriCap claimed that it purchased Robison Farms' accounts receivable under a traditional factoring agreement and that it therefore held no assets of Robison Farms that were subject to a PACA trust. It also asserted as a defense that it was a bona fide purchaser for value.

The district court rejected AgriCap's position and found that AgriCap had a lending arrangement with Robison Farms secured by Robison Farms' accounts receivable ("AR"). Accordingly, it concluded that AgriCap held the accounts receivable as part of the PACA trust, the assets of which had to be used to pay unpaid commodities sellers before any other creditor.

> For the reasons that follow, we affirm the district court's conclusion that Robison Farms' accounts receivable were held by AgriCap as collateral for a loan and therefore were *subject to a PACA trust*, but we disagree with the amount that the district court required AgriCap to pay the commodities sellers. Accordingly, we affirm in part, vacate in part, and remand for a reassessment of damages in accordance with this opinion.

*Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 594 (4th Cir. 2010). (Emphasis added.)

On remand, the district court awarded full damages to Plaintiffs, plus attorney fees to Nickey Gregory Company, LLC, in accord with the Fourth Circuit's opinion, and entered final judgment awarding Plaintiffs $204,305.86 against AgriCap. *Nickey Gregory Co., LLC v. AgriCap, LLC*, 2010 U.S. Dist LEXIS 34804 (D.S.C. April. 8, 2010), and 2010 U.S. Dist LEXIS 56395 (D.S.C. June 8, 2010). This is the final judgment upon which the writs of execution were issued, and not the original judgment entered in 2008, as misstated by FCC. Third Party Claim of FCC, p. 2:9-10.

**B.      The court of appeals and the district court ruled that AgriCap unlawfully held Plaintiffs' PACA trust assets from Robison Farms as collateral for its secured loan.**

Plaintiffs obtained a judgment against AgriCap and levied on its bank accounts. FCC claims a priority position over the levied funds in AgriCap's accounts because it holds a blanket security interest over all of AgriCap's assets, including funds in those accounts levied upon. But such security interests do not trump the claims of PACA trust creditors. *Nickey Gregory*, 597 F.3d at 595. See also *Boulder Fruit Express & Heger Organic Farm Sales v. Transp. Factoring, Inc.*, 251 F.3d 1268, 1270 (9th Cir. 2001) (PACA trust meant to remedy the burden on commerce in perishable agricultural commodities caused by

accounts receivable financing arrangements that give lenders a security interest' in the perishable agricultural commodities superior to the growers). Although the court cited *Boulder Fruit* to define the purpose of the PACA trust, it distinguished the holding in that case from this case. In *Boulder Fruit*, the court found for the finance company, but only because, "That case involved a true factoring relationship, in which the receivables were actually sold to the factor. Thus, unlike in this case, the receivables no longer remained PACA trust assets." *Nickey Gregory Co., LLC v. AgriCap, LLC* 597 F.3d at 604 (4th Cir. 2010)

In addition, the loan documents FCC submitted with its Third Party Claim show that, before it filed its Statement of Claim, FCC knew that it held the same Robison Farms' PACA trust assets as collateral for its secured loan to AgriCap, which the court of appeals and the district court ruled were subject to the PACA trust. Thus, FCC's claim that it has priority over the levied funds based on its security interest has no merit.

### III.     ARGUMENT

#### A.     Summary

FCC contends that the levied funds are not PACA trust assets because they have long since disappeared through its revolving line of credit to Agricap; and that Plaintiffs have the burden of tracing the trust funds, which they cannot satisfy under the common law "lowest intermediate balance rule," citing *ITT Commercial Finance Corp. v. Tech Power, Inc.,* 43 Cal. App. 4th 1551, 1558 (1996). On the contrary, FCC, as the party challenging the PACA trust, has the burden of proving that trust funds were not in the levied accounts. *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010 (6th Cir. 1993). Since the trust funds were commingled with non-trust funds, FCC cannot meet its burden. *Id.*

Furthermore, common law trust principles do not apply if they conflict with the language of the statute, the clear intent of Congress in enacting the statute, or the accompanying regulations. *Boulder Fruit*, 251 F.3d at 1271; *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 487 (2d Cir. 2001). Under the "lowest intermediate balance rule," secured lenders could easily evade the PACA trust by recycling trust funds through multiple

accounts, and then depleting such accounts, as occurred in this case. Since this conflicts with the clear intent of Congress that PACA trust creditors have priority to trust assets over secured lenders, the "lowest intermediate balance rule" does not apply. Finally, Nickey Gregory is entitled to attorney fees in connection with this proceeding under the rulings of the Fourth Circuit and the district court, since the fees incurred in this legal action are "sums due in connection with the transactions," and payable from the PACA trust funds held in AgriCap's accounts. *Nickey Gregory*, 597 F.3d at 597.

### IV. Analysis

#### A. FCC's security interest does not have priority over the funds levied under Plaintiff's PACA Trust Judgment.

FCC's argument that it has priority over the levied funds in AgriCap's accounts because it holds a security interest in those funds is erroneous. It is black letter law that such security interests do not trump the claims of PACA trust creditors. *Nickey Gregory*, 597 F.3d at 595. See also *Boulder Fruit,* 251 F.3d at 1270 ("In 1984, Congress amended PACA 'to remedy [the] burden on commerce in perishable agricultural commodities and to protect the public interest" caused by accounts receivable financing arrangements that 'encumber or give lenders a security interest' in the perishable agricultural commodities superior to the growers. 7 U.S.C. §499e(c)(1).") To the extent that FCC argues its security interest is first in time so first in right, because it arose prior to the judgment entered in favor of Plaintiffs, FCC is incorrect. See Third Party Claim, p. 2:22-3:7. The PACA trust arises upon delivery of the produce and remains in effect until there is full payment. 7 U.S.C. §499e(c)(2). Thus, FCC's security interest cannot have priority over the PACA trust either because FCC's lien existed before a PACA trust arose or before a PACA trust judgment is entered, because the trust arose on delivery of the produce and is not extinguished until the producer has been paid.

In addition, FCC's loan documents with AgriCap reveal that FCC knew, before it filed its Third Party Claim, that it held the same Robison Farms' PACA trust assets as collateral for its secured loan to AgriCap, which the court of appeals and the district court ruled were

subject to the PACA trust. AgriCap provided accounts receivable financing to Robison Farms from March 2005 through July 2006. *Nickey Gregory*, 597 F.3d at 596?. On March 6, 2006, FCC commenced providing receivable financing to AgriCap via a revolving line of credit. FCC Third Party Claim, p.4:6-10; see also, Exhibit 4 to FCC Third Party Claim, the Loan and Security Agreement between FCC and AgriCap. AgriCap used the funds from FCC to provide accounts receivable financing to its "Clients." *Id*; see also, FCC Third Party Claim, p. 4:13-15. ("FCC agreed to lend AgriCap money secured by collateral in the form of Accounts Receivable ("AR") which is pledged to FCC in the Loan Agreement.") FCC held the receivables, which AgriCap obtained under its financing agreements with its Clients, as collateral for its loans to AgriCap. Exhibit 4, p. 24 ¶5, and p. 2 (defining "Client"). Robison Farms, the PACA trustee in the litigation against AgriCap resulting in the judgment at issue, is specifically identified as an AgriCap Factoring "Client" in Schedule 21 to Exhibit 4, the FCC Loan and Security Agreement. Robison Farms is again shown as one of the sources of accounts receivable used as collateral for FCC's loan to AgriCap in the March 9, 2006 Borrowing Base Certificate to FCC, attached as Exhibit A to Exhibit 4, the FCC Loan and Security Agreement.

Under the FCC Loan and Security agreement, PACA trust assets in the form of payments received from the Customers of Robinson Farms were deposited in a Lockbox controlled by FCC. "Borrower [AgriCap] shall cause each Client [Robison Farms] to advise its Customers [Accounts Receivable of Robison Farms] to remit payment on all Client Accounts and all other amounts owing to such Client directly to the Lockbox." Exhibit 4, p. 21 ¶(vii). "'Lockbox' means that [a] certain post office box maintained on behalf of Borrower [AgriCap] and subject to a control agreement in favor of Lender [FCC] in form and substance acceptable to Lender into which Borrower shall have instructed all of its Customers to remit payments." *Id.* p. 11. "'Client Accounts Customer' means any Person that (I) has entered into a Factoring Agreement with the Borrower, or (ii) sold or will sell their Accounts to Borrower …". *Id.* p. 2. "'

1    Thus, before it filed its Third Party Claim, FCC knew that it both: wrongfully held the
2 same PACA accounts receivable of Robison Farms as security for its advances to AgriCap,
3 as the court of appeals and the district court had ruled that AgriCap wrongfully held as
4 security for its advances to Robison Farms; and received into its Lockbox over $668,000 in
5 PACA trust assets in the form of Robison Farms's accounts receivable after May 11, 2006,
6 in breach of the trust. *Id.* Thus, FCC's Third Party Claim regarding the priority of its security
7 interest over the PACA trust claims of Plaintiffs has no merit and is an improper attempt to
8 relitigate issues that have already been decided.

**B.  FCC also contends without effect that none of the accounts levied upon contain PACA trust assets as follows. To the contrary, FCC has the burden of tracing which it fails to meet.**

"Under the terms of the Loan Documents, all of AgriCap's AR was provided as collateral to secure cash advances made by FCC to AgriCap. As explained by Mark A Parreira, in his affidavit accompanying this Third Party Claim, when that AR was paid by AgriCap's client it was wired to an account other than one of those levied upon. (Parreira Aff. ¶7.) Simply put, FCC loaned money to AgriCap based, in part, on the amount of AR that AgriCap pledged to FCC. AgriCap's customers then paid on invoices directly into an account other than one of those levied upon." FCC Third Party Claim p. 5:12-15. Emphasis added.

The "account other than one of those levied upon," is the Lockbox controlled by FCC, into which the Robison Farms PACA trust funds were deposited. FCC contends Plaintiffs have the burden of tracing, and they cannot trace the trust assets to the accounts levied upon, based upon the "lowest intermediate balance rule," citing *ITT Commercial Finance Corp. v. Tech Power, Inc., et al.*, 43 Cal. App. 4th

First, FCC, as the party which commingled the PACA trust funds, has the burden of proof on the tracing issue, not Plaintiffs. As explained in *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1013-1014 (6th Cir. Ohio 1993). 1551, 1558 (1996).

> The trust impressed by section 5(c)(2) is a nonsegregated "floating trust" made up of all a firm's commodity related liquid assets, under which there may be a commingling of trust assets. Under this provision there is no necessity to specifically

> identify all of the trust assets through each step of the assets accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them. H.R. Rep. No. 98-543 at 5. Congress enacted the 1984 Amendments to protect what it determined to be an especially vulnerable class. Courts have recognized this purpose and consistently placed the burden of tracing on the purchaser in cases where the purchaser deals exclusively in produce.

See, e.g., *In re Atlantic Tropical Market Corp.*, 118 Bankr. 139 at 142 (Bankr. S.D. Fla. 1990).

Also, at least one circuit court has placed the tracing burden on the purchaser or PACA debtor when the purchaser commingled proceeds from the sale of produce with proceeds from the sale of other commodities. *Six L's Packing Co. v. West Des Moines State Bank*, 967 F.2d 256, 258 (8th Cir. 1992).

> We see no reason to shift the tracing burden to the produce supplier when the purchaser commingles produce proceeds with the proceeds from the sale of other commodities. The harsh effect on other suppliers is not persuasive. Although the PACA trust may not adversely affect suppliers of non-produce commodities when the purchaser deals exclusively in produce, other unsecured creditors -- and even secured creditors -- must still suffer the "harsh effect" of the produce suppliers being elevated from the status of unsecured creditors to trust beneficiaries.
>
> We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. This holding is consistent with PACA's statutory language, the legislative history, and past court decisions interpreting PACA. We recognize that in most cases it will be virtually impossible for a PACA debtor to trace the origin of the disputed assets. In re Gotham Provision Company, Inc., 669 F.2d 1000, 1011 (5th Cir.) (discussing the impossibility of tracing assets under similar trust provisions of the Packers and Stockyards Act), cert. denied, 459 U.S. 858, 74 L. Ed. 2d 111, 103 S. Ct. 129 (1982); In re Fresh Approach, 51 Bankr. at 422. See also In re Gotham Provision Co., 669 F.2d 1000, 1011 (5th Cir.1982) cert. denied, 459 U.S. 858, 74 L. Ed. 2d 111, 103 S. Ct. 129 (1982), cited in Sanzone-Palmisano, noting the impossibility of tracing assets under similar trust provisions of the Packers and Stockyards Act, and holding that, "The only burden on the (trust creditors) in such a case is to prove the balance due to them and the existence of a floating pool of commingled inventories of livestock products, accounts receivables and proceeds derived from cash and credit livestock sales." In this case, FCC as the party directing the deposit and commingling of trust funds has the tracing burden. Absent such a rule, secured lenders could defeat the trust by moving trust funds in and out of different accounts, contrary to PACA and the intent of Congress.

FCC's own evidence demonstrates that it cannot meet its burden of tracing. In the Affidavit of Mark A. Parreira, he states that he is "presently" the Chief Financial Officer of AgriCap (¶2), and that he is "informed that the account (the "Funding Account") has never received and will not receive, monies deposited by AgriCap and that the Funding Account

has never received monies from any source other than advances made by FCC under its loan to AgriCap." *Id.* ¶6. He further states that the Operating Account levied upon never received monies from any source other than from the Funding Account. Id. ¶7. But AgriCap received PACA trust assets and commingled them with other assets which were held as security by FCC and received by FCC. Furthermore, based on the FCC's Loan and Security Agreement (Exhibit 4), and the Exhibits thereto, PACA trust assets, in the form of payments of at least $668,000 from the Robison Farms' customers, went into the Lockbox controlled by FCC. These funds were commingled with other FCC funds, which were recycled and advanced to AgriCap, as part of its revolving line of credit, into the Funding Account and Operating Account levied upon. Such commingling does not defeat the trust, and under such circumstances, FCC cannot meet its burden of tracing. See *Boulder Fruit,* 251 F.3d at 1270, "This provision imposes a 'nonsegregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust," citing *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995) (citations omitted); *Sanzone-Palmisano*, supra.

Second, the "lowest intermediate balance rule" used in tracing trust funds is a common law rule. *ITT Commercial Finance Corp. v. Tech Power, Inc.*, 43 Cal. App. 4th 1551, 1558 (Cal. App. 2d Dist. 1996) citing *Chrysler Credit Corp. v. Superior Court*, 17 Cal. App. 4th 1303, 1316 (Cal. App. 1st Dist. 1993). Such common law trust rules do not apply if they conflict with PACA. *Nickey Gregory* 597 F.3d at 595-596; *Boulder Fruit*, 251 F.3d at 1271. As explained in *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 487 (2d Cir. 2001):

> Trusts created under PACA are statutory trusts, and common law trust principles are not applicable if they conflict with the language of the statute, the clear intent of Congress in enacting the statute, or the accompanying regulations. Cf. Varity Corp. v. Howe, 516 U.S. 489, 497, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996) (interpreting ERISA and holding that 'in some instances, trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes require departing from common-law trust requirements'). For example, trustees are generally required to keep trust assets separate from non-trust assets. Restatement (Second) of Trusts §179 (1959). Under PACA, however, PACA trustees are specifically permitted to commingle PACA trust assets. 7 C.F.R. §46.46(b) (Trust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of assets is contemplated.) The applicability of any

principle of trust law to a PACA trust must be tested against the language and purpose of the statute and the accompanying regulations.

The "lowest intermediate balance rule" conflicts with the purpose of PACA and the intent of Congress because it places the burden of proof on the trust creditor contrary to the law under PACA, and it would allow secured lenders to obtain trust funds, and then recycle those funds to other accounts which are then depleted to avoid the PACA trust under the "lowest intermediate balance rule." This is exactly what FCC says happened in this case, in order for it to try to sidestep the PACA trust. Third Party Claim, p. 7:9-14. Thus, use of the "lowest intermediate balance rule" would allow commingling and depletion of trust assets that would defeat the PACA trust, contrary to the statute and case law, which "permits the commingling of trust assets without defeating the trust." *Boulder Fruit*, 251 F.3d at 1270.

FCC also claims that the judgment at issue is merely a money judgment, and does not require disgorgement of the PACA trust assets. Third Party Claim, p. 6:21-7:1. But the district court's Opinion and Order that accompanied its original judgment states that AgriCap, a secured lender of Robison Farms, "shall disgorge the trust assets." *Nickey Gregory Company, LLC v. AgriCap, LLC*, 592 F.Supp.2d 862, 878 (D.S.C. 2008). Furthermore, even if the district court had stated in its judgment that "AgriCap is required to disgorge the trust assets," as FCC suggests, such relief would have been illusory due to FCC and AgriCap moving its money around multiple banks accounts. FCC would then make the same argument that it cannot find any PACA trust assets to disgorge. FCC's argument demonstrates the wisdom of the rule that FCC and AgriCap have the burden of tracing because otherwise commingling would defeat the trust, which is contrary to the law. *Nickey Gregory,* 597 F.3d at 595?, citing 7 C.F.R. 46.46(b). Since FCC and AgriCap commingled the trust assets, the levies upon the funds in the commingled accounts based on the PACA trust money judgment result in disgorgement of the PACA trust assets.

**C.     Nickey Gregory is entitled to attorney fees incurred in this proceeding.**

Plaintiff Nickey Gregory is entitled to an award of attorney fees incurred in this proceeding brought by FCC. The district court and the court of appeals held that Nickey

Gregory should be awarded attorney fees necessary to collect any balance due under its invoices. The district court explained why an award of attorney fees was required.

Further, as noted in the court's December 2008 order, the case law supports an award of attorneys' fees to PACA trust creditors who have the requisite attorney fee language on their invoices as "sums owing in connection with such transactions." 7 U.S.C §499e(c)(2). *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 707 (2d Cir. 2007); *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004); *Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.,* 307 F.3d 1220, 1224 (9th Cir. 2002). The language on Nickey Gregory's invoices to Robison Farms provides in pertinent part: "Interest at 1.5% added to unpaid balance. Interest and attorney's fees necessary to collect any balance due hereunder shall be considered sums owing in connection with this transaction under the PACA trust." (Nickey Gregory Mem. Supp. Pet. Att'y Fees 4.) Since Nickey Gregory "has taken legal action to collect past due amounts, its attorneys' fees constitute 'sums owing in connection with such transactions' and are payable from the PACA trust amounts." *E. Armata, Inc. v. Platinum Funding Corp.,* 887 F. Supp. 590, 594-95 (S.D.N.Y. 1995). Thus, Nickey Gregory is entitled to reasonable attorney fees. *Nickey Gregory Co., LLC v. AgriCap, LLC*, 2010 U.S. Dist. LEXIS 56395 *4-5 (D.S.C. June 8, 2010). Nickey Gregory has now had to incur additional legal fees and costs to collect its past due trust funds because of FCC's Third Party Claim, which has no legal merit. Such fees constitute "'sums owing in connection with such transactions' and are payable from the PACA trust accounts." *Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.,* 307 F.3d 1220, 1224 (9th Cir. 2001).

### V.     Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the district court enter judgment dismissing the Third Party Complaint, order that Plaintiffs are entitled to the proceeds of the levies, and award Nickey Gregory fees and costs under Local Rule 54-5.

Respectfully submitted.

DATED: May 9, 2011



_____

JAMES LARSON
United States Magistrate Judge

G:\JLALL\CASES\CIV-REF\10-80297\R&R DENY 6.wpd

**United States District Court**
For the Northern District of California